[No. 23455.   Department Two.   December 22, 1931.]

ERNEST FINNEY, *Respondent,* v. GEORGE D. SHANNON
*et al., Appellants.*[1]

*Atwell & Moore,* for appellants.

*Edgar P. Reid,* for respondent.

MILLARD, J.—This is an action to recover from a
police officer and his surety for personal injuries al-
leged to have been sustained as the result of an assault
upon the plaintiff by the police officer.   From the judg-
ment entered on the verdict in favor of the plaintiff,
motions for judgment notwithstanding the verdict and
for a new trial having been overruled, the defendants
appealed.

[1]Reported in 6 P. (2d) 360.

Counsel for appellants contend that respondent cannot maintain an action upon Shannon's bond, inasmuch as there is neither statutory authority or authorization by the city council for the requiring of a surety bond of Shannon as a condition precedent to his holding office as a police officer.

Kelso is a city of the third class. On February 1, 1930, appellant Shannon was appointed police sergeant of that city. On February 10, 1930, upon demand of the mayor and the chief of police, Shannon gave to the city of Kelso the following surety bond to secure the faithful performance of all of the duties incumbent upon him as a police officer:

"KNOW ALL MEN BY THESE PRESENTS, That we George D. Shannon, as Principal, and the Metropolitan Casualty Insurance Company of New York, a corporation, of the state of New York, duly authorized to transact the business of surety in the state of Washington, as surety, are held and firmly bound unto the CITY of KELSO in the penal sum of Two THOUSAND—no/100 Dollars ($2,000) lawful money of the United States, for the payment of which well and truly to be made we hereby bind ourselves, our heirs, executors, administrators, successors and assigns, jointly and severally, firmly by these presents.

"SIGNED, SEALED AND DATED this 10th day of February, A. D. (1930).

"THE CONDITION OF THE FOREGOING OBLIGATION IS SUCH, That WHEREAS, the above bounden principal was on the 1st day of February, 1930, duly appointed to the office of police sergeant for the term commencing February 1st, 1930, and ending February 1st, 1931, and until his successor has been elected or appointed and duly qualified.

"Now, THEREFORE, if the said above named principal shall well, truly and faithfully perform all and singular the duties encumbent upon him and shall honestly account for all monies or other property coming into his hands as said police sergeant all according to law as now in force or as may be hereafter enacted, then this

obligation shall be null and void; otherwise to remain in full force and effect.

Witness: GEORGE D. SHANNON, (Seal)
"LUCIEN B. CRAWFORD.

"As to Principal.

"THE METROPOLITAN CASUALTY INSURANCE COMPANY OF NEW YORK.

"(Seal) By W. L. Bell,
"W. L. Bell,
"Attorney in fact."

The bond was duly filed in the office of the city clerk.

The statutory provision is mandatory that, in cities of the third class, the treasurer, city attorney, clerk, police judge and chief of police shall, before entering upon their duties, take an oath of office and execute a bond to the city conditioned upon the faithful performance of their duties. Whether the oath and bond shall be required of other city officers is optional with the city council.

"The treasurer, city attorney, clerk, police judge, chief of police and such other officers as the council may require shall each, before entering upon the duties of his office, take an oath and execute a bond to the city in such penal sum as the council shall determine, conditioned upon the faithful performance of his duties and otherwise conditioned as may be provided by ordinance." Rem. Comp. Stat., § 9118.

The government of the city of Kelso is vested

". . . in a mayor and a city council, to consist of seven members, a treasurer, a city attorney, a clerk, and such subordinate officers as are hereinafter provided for; . . ." Rem. Comp. Stat., § 9115.

Counsel for respondent contends that, as the statute does not prescribe the method by which the city council may require bonds of "such other officers," the vote may be given in any form which clearly expresses the will of the councilmen. McQuillin, Municipal Ordinances, page 184, § 116.

It cannot be successfully contended, however, that if the council does not so order or so require, a bond can be legally exacted of "such other officers" as a prerequisite to their holding office. The votes of four councilmen therefor are essential to the validity of any such order or requirement.

"No ordinance and no resolution or order shall have any validity or effect, unless passed by the votes of at least four councilmen." Rem. Comp. Stat., § 9125.

The statute (Rem. Comp. Stat., § 9139), provides that a "full, true record of every act and proceeding of the city council" shall be kept by the city clerk. The minutes of the meeting of the city council on June 23, 1925, disclose that the mayor and five councilmen were present; that certain business was transacted, committees appointed, and that, upon the suggestion of the mayor, bond of two thousand dollars "was set for police." The minutes read as follows:

"Council meeting came to order with the following officers present: Mayor Smith, councilmen Burcham, Jacques, Miller, Jones, Mallory, Councilman Hall being absent.

"Mayor Smith stated to the council that all city employees handling funds of the City should be bonded. Upon advice of the City Attorney Stone the following bond was set, for Police $2,000 . . . Engineer $2,000.

"Councilman Jones moved, seconded by Burcham that Council meeting adjourn until June 30th, 1925, at eight o'clock P. M. Carried."

The minutes were signed by the Mayor and attested by the city clerk. It does not appear from the minutes —the city clerk testified that, had such action been taken, it would appear in his minutes—that any motion was made or resolution or order proposed requiring the bonding of police officers and the city engineer. There is no showing that the suggestion of the mayor

was opposed by any member of the council, neither is there any showing that the matter was submitted to a vote. It does not appear that any motion "was carried." All that appears is that, upon the advice of the city attorney, two thousand dollars was the amount of the bond "set for the police."

It will not do to say that the statute is silent as to the mode of voting; that the method followed is not forbidden by any law; that all present had an opportunity to vote; that one more councilman than was necessary was present; that none dissented, hence it is clear that all were in accord that the bond should be required. While no set form of words is essential, nor is it necessary that those words be written instead of oral (if thereby the mind of the council is expressed), the record must affirmatively show that the requisite number of councilmen voted for the adoption of such view. The record is not sufficient to show with sufficient certainty that four members of the council voted for the suggestion of the mayor.

A charter of a Michigan city required that the votes of all the members of the city council in relation to any proceeding or proposition had at any meeting, be entered at large on the minutes. The record of a meeting of the council disclosed that it was a regular meeting; that seven councilmen, naming them, were present; that a resolution, quoting it, was offered by alderman Carlisle. Following the copy of the resolution is a minute, "Adopted unanimously on call." In holding that the minute entry was not a compliance with the charter requirement, the late Judge Cooley, speaking for the court, said:

" . . . but their argument is that the record shows, *first,* the names of the several aldermen who were present when this action was had; *second,* that the roll was called on the vote; and, *third,* that each of

them, when the roll was called, voted for the adoption of the resolutions. This being so, the vote is, in effect, entered at large on the minutes, and the repetition of the names of the aldermen in the minutes, when the precise position of each upon the resolution submitted was already recorded, would have been only an idle ceremony, accomplishing no useful purpose. . . .

"Now, if the record in the present case shows precisely who voted for the resolution in question, it is apparent that the object of the statute has been fulfilled, and we may be able to sustain the action, notwithstanding the compliance with its provisions has not been exactly literal.

"We are of the opinion that the record does not show with sufficient certainty that all the members present at roll-call at the opening of the meeting in question, voted for the resolution; and if it does not show that all did, it does not show that any particular one of them did. What it does show is, that at roll-call when the meeting was opened certain members named were present, and that afterwards, before the meeting adjourned, certain resolutions were adopted unanimously on call. Now, if it were a legal presumption that all the members who were present at the call to order of such a meeting remained until its adjournment, and that no others came in and took their seats afterwards, and if it were also a presumption that every member voted on each resolution on roll-call, the argument of defendants would be complete, and we could say with legal certainty from this record that these resolutions were passed with the affirmative vote of each of the members named as present in the clerk's minutes of the meeting in question.

"But surely there are no such presumptions of law, and if there were, they would be contradictory to the common experience of similar official bodies. It is very well known that it is neither observed nor expected that when a legislative body of any grade has commenced its daily session, the doors will be closed to prevent the ingress of members not prompt in arrival, or the egress of others who may have occasion to leave. The actual attendance on such a body will frequently

be found to change materially from hour to hour, so that a record that a vote was passed unanimously would be very slight evidence that any particular member present at the roll-call voted for it, or that any member not then present did not. And even if the record could be held to afford a presumption on that subject, its character must be so faint, doubtful and unreliable as to subserve no valuable purpose. Moreover, the members actually present are usually allowed to vote or not to vote at their option, except in cases of close votes, or where an appeal is to be made to the people; and if the vote of a quorum is in favor of a resolution, and no vote is cast against it, the record may still be that it was 'adopted unanimously on call,' though some of the members present abstained from voting.'' *Steckert v. City of East Saginaw,* 22 Mich. 103.

The bond in question is not available to protect the interests of the respondent, the record failing to disclose that four councilmen were present at the meeting and voted to require the bond in question.

The judgment is affirmed as to the appellant Shannon. As to the appellant surety the judgment is reversed, and the cause remanded with direction to dismiss the action.

MAIN, HOLCOMB, and BEALS, JJ., concur.

TOLMAN, C. J. (dissenting)—The Michigan decision was right when rendered in the days before compensated sureties were known, but under modern conditions the rule should no longer be applied. I therefore dissent.